## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | **CHAPTER 11** |
| | § | |
| **NEW LOUISIANA HOLDINGS, LLC,** | § | **CASE NO. 14-50756** |
| **et al.** | § | |
| | § | |
| **DEBTORS.** | § | **(Joint Administration Requested)** |

## DECLARATION OF RAYMOND P. MULRY
## IN SUPPORT OF CERTAIN FIRST DAY PLEADINGS

1.    My name is Raymond P. Mulry. I am a Designated Officer of each of the Debtors (collectively, the "Debtors"),[1] the debtors-in-possession in the above-captioned bankruptcy cases (collectively, the "Bankruptcy Cases"), and Associate General Counsel & Vice President – Corporate and Regulatory Affairs of Health Care Navigator LLC, an affiliate of the Debtors that provides administrative services to the Debtors. In this capacity, I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, books and records.

2.    Commencing on June 25, 2014 and periodically thereafter (as applicable, the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code").[2]

3.    The Debtors have requested various types of relief in their "first day" motions and applications (each, a "First Day Motion" or "Motion"). The First Day Motions seek relief intended to allow the Debtors to: (a) administer their cases in an efficient manner, (b) preserve

---

[1] The Debtors include the following: New Louisiana Holdings, LLC, Jackson Manor 1691 Tenant, LLC, Fountain View 215 Tenant, LLC, Acadian 4005 Tenant, LLC, Atrium 6555 Tenant, LLC, Citiscape 5010 Tenant, LLC, Lakewood Quarters Assisted 8585 Tenant, LLC, Lakewood Quarters Rehabilitation 8225 Tenant, LLC, Panola 501 GP LLC, Regency 14333 Tenant, LLC, Retirement Center 14868 Tenant, LLC, St. Charles 1539 Tenant, LLC, Sherwood 2828 Tenant, LLC and Woodland Village 5301 Tenant, LLC.

[2] All of the statutory references contained in this Declaration will be to the Bankruptcy Code, unless otherwise indicated.

the value of their ongoing operations, and (c) perform and meet those obligations necessary to fulfill their duties as debtors-in-possession in the Bankruptcy Cases. I am familiar with the contents of each of the First Day Motions (including the exhibits thereto), and I believe that the relief sought in each of the First Day Motions: (a) is necessary to enable the applicable Debtor(s) to operate in Chapter 11 with minimal disruption or loss of productivity or value; (b) constitutes a critical element to achieving a successful reorganization of the applicable Debtor(s); and (c) best serves the Debtors' estates and creditors' interests.

4. I submit this Declaration in support of the First Day Motions. Except as otherwise indicated, all of the facts set forth herein are based upon my personal knowledge of the Debtors, information learned from my review of relevant documents, or information supplied to me by other members of the Debtors' management and the Debtors' professionals. I am authorized to submit this Declaration on behalf of the Debtors, and if called on to testify, I could and would testify competently to the facts set forth herein.

## I. THE DEBTORS' BUSINESS AND OPERATIONS

### A. Overview of the Debtors' Business

5. New Louisiana Holdings, LLC ("NLH") is a Louisiana limited liability company that, together with its other Debtor subsidiaries and affiliates (collectively, the "NLH Group"), was formed for the purpose of acquiring the leasehold rights to an apartment building located in Louisiana ("Citiscape") and the operations of twelve skilled nursing and assisted living facilities and properties (the "Facilities"), eleven of which were located throughout Louisiana and one of which was located in Texas.[3] The Facilities were acquired in a series of transactions that closed effective January 1, 2006 pursuant to which the NLH Group purchased the operations of the

---

[3] The Facilities were located in Jonesboro, LA, Springhill, LA, Baton Rouge, LA, Metairie, LA New Orleans, LA and Carthage, TX.

Facilities and leased the real property related to the Facilities and Citiscape from an unrelated third party. At the peak of operations, the NLH Group operated 12 Facilities that collectively had more than 1600 beds.

6. As discussed in more detail below, in 2011, following years of substantial losses in connection with the Facilities, the Debtors entered into a series of transactions pursuant to which the operations of all of the Facilities were transferred to new operators, except for those of Regency 14333 Tenant LLC d/b/a Regency Place Nursing & Rehabilitation ("Regency"), and the lease for Citiscape was terminated.

7. A chart setting forth the corporate structure of the Debtors is attached hereto as **Exhibit A**.

**B.     Prepetition Debt Structure**

8. The funds necessary to consummate the acquisition of the Facilities in 2005-2006, as well as for a working capital line of credit, were derived in large part from a secured financing (the "Loans") provided by a consortium of lenders led by Merrill Lynch Capital ("MLC"). In or around December 2007, GE Business Financial Services, Inc. ("GE") acquired MLC's healthcare financing business and, as a result, MLC's interests in the Loans related to the Facilities. Likewise, GE assumed the role of administrative agent under the Loans. In 2011, the Loan obligations to GE were resolved in connection with a series of transactions that transitioned the operations of the Facilities to new unaffiliated operators (excluding those of Regency) and resulted in GE granting a full release to the NLH Parties.

9. As of the Petition Date, the Debtors' unsecured debt is primarily comprised of trade debt, unliquidated personal injury and commercial litigation claims, and inter-company claims owed to affiliates.

## II. EVENTS LEADING TO THE DEBTORS' BANKRUPTCY

### A. Impact of Hurricanes Katrina and Rita

10.     A majority of the Facilities were located in areas that had been most severely damaged by Hurricanes Katrina and Rita in August and September 2005. Consequently, the Debtors faced a number of significant challenges in connection with the Facilities that did not exist when the business decision was made to enter into the transaction including (i) increased property repair costs (related to visible as well as latent damage), (ii) increased maintenance costs, and (iii) the unexpected permanent migration out of the area following the hurricanes, which affected both the target population for potential residents as well as staff. Operations of the Facilities suffered as a result.

### B. Defaults Under Loan Documents and Disputes with GE

11.     The poor operating performance of the Facilities resulted in certain covenant defaults in the Loans. MLC and the participating lenders initially cooperated with the Debtors given the unique and unprecedented conditions caused by the hurricanes. However, following GE's acquisition of MLC's interests in the Loans, the lenders' cooperation ceased. Shortly after GE succeeded to MLC's interests in the Loans, GE declared the Loans to be in default due to technical breaches of various loan covenants. In declaring the Loans in default, GE triggered a number of provisions that negatively impacted cash flow for the Debtors. Ultimately, the various disputes between the Debtors and the lenders resulted in litigation over the Loans.

### C. Transfer Of Operations

12.     In August 2011, NLH reached the first of several agreements with GE and the other lenders to resolve their disputes and exit as operator of most of the Facilities. From September through November 2011, the operations of all of the Facilities but one were

transferred to new operators. Regency continues to operate a skilled nursing facility with 129

beds in Baton Rouge, Louisiana.

13. Following the operations transfers in 2011, the non-operating Debtors continued

to wind down their businesses, and Regency continued to operate its business. Ultimately,

however, it became clear that there would be insufficient funds with which to resolve all

outstanding liabilities against the Debtors and the decision was made to commence the

Bankruptcy Cases with the goal of proposing and confirming a consensual plan for the mutual

benefit of all stakeholders.

## III. THE DEBTORS' FIRST DAY MOTIONS

**A.   Introduction**

14. In order to facilitate the transition into bankruptcy and minimize the adverse

effects of the commencement of the Bankruptcy Case on its business, the Debtors have requested

various types of relief in the First Day Motions, all of which are being filed concurrently with

this Declaration. I submit this Declaration in support of the following First Day Motions filed by

Regency and the other Debtors:

      a.    Emergency Motion for Authority to Maintain Existing Bank Account as Debtor-In-Possession Bank Account (the "Bank Account Motion");

      b.    Emergency Motion for Interim and Final Orders (i) Prohibiting Utilities from Altering, Refusing, or Discontinuing Services on Account of Prepetition Invoices, (ii) Approving Procedures for Providing Adequate Assurance of Post-petition Payments, and (iii) Approving Debtor's Proposed Form of Adequate Assurance (the "Utility Motion");

      c.    Emergency Motion for Authority to Pay Pre-Petition Employee Wages, Compensation and Employee Benefits (the "Wage Motion");

      d.    Motion for Motion for an Order Directing the Joint Administration of Chapter 11 Cases (the "Joint Administration Motion").

15. I have reviewed each of the First Day Motions (including the exhibits and schedules thereto). The facts stated therein are true and correct to the best of my knowledge, information and belief, and I believe that the relief sought in each of the First Day Motions: (a) is necessary to enable Regency to operate in Chapter 11 with minimal disruption to its Facility; and (b) constitutes a critical element in achieving a successful reorganization of the Debtors.

**B. The Bank Account Motion**

16. Regency maintains a bank account at Bank of America which is designed to receive, among other payments, Medicare, Medicaid and other government receivables (the "Bank Account"). The Bank Account is also utilized to process ACH debits to cover the payroll for Regency's employees, which are made by direct deposit to the employees. I am informed that if Regency closes the Bank Account, there will be an approximately six to eight week delay in connecting Medicare and other government payments to a new debtor-in-possession bank account. Regency relies on these government payments to fund its day-to-day business operations, and cannot meet its ongoing payment obligations without these payments. If Regency is forced to close the Bank Account and open a new debtor-in-possession account, the attendant delay in receipt of government payments would be extremely harmful to its business operations and Regency's reorganization, as Regency would not have the funds necessary to pay its post-petition operating expenses or its employees. Furthermore, requiring Regency to close the Bank Account and open another payroll account would delay payment of payroll to Regency's employees, which is scheduled to occur on July 22, 2014. Consequently, Regency is requesting the waiver of the requirement that it close its existing Bank Account so that it may maintain the existing Bank Account as its debtor-in-possession account.

## C. The Utility Motion

17. In the ordinary course of business, Regency uses gas, water, electric, telephone, and other utility services provided by various utility providers (collectively the "Utilities"). A list identifying each Utility currently providing service to Regency is attached to the Utility Motion as **Exhibit A**. As with most businesses, uninterrupted utility services is critical to Regency's ability to maintain its ongoing operations. Termination of services by the Utilities would effectively preclude Regency from operating, resulting in lost revenue and significant harm its estate. As adequate assurance of payment under Section 366(b), Regency proposes to place a deposit with each Utility equal to thirty days' average billing based on the average monthly billing over the previous 12 months. The amount of the proposed deposit for each Utility is set forth on **Exhibit A** to the Utility Motion. Regency will remain current on billing for all post-petition services provided by the Utilities. I believe that the proposed deposit will adequately assure the Utilities of payment for post-petition utility service.

## D. The Wage Motion

18. To maintain the continuity of the Regency's business operations and to preserve the morale of its employees, it is important that Regency be permitted to honor and pay the Pre-Petition Employee Obligations (as that term is defined in the Wage Motion) at its discretion in the ordinary course of business. The continued loyalty of a debtor's employees is a necessary component to any successful Chapter 11 case. The filing of a Chapter 11 petition is a stressful and uncertain time for a debtor's employees and such stress and uncertainty often cause poor employee morale at a time when a debtor needs its employees to be most loyal. If employees do not receive payment for work performed pre-petition, it is likely that Regency will lose employees with little or no notice. Moreover, many of Regency's employees live paycheck to paycheck and would suffer severe adverse consequences if they failed to receive their full

compensation. Likewise, Regency would suffer immediate and irreparable harm as a result of any resulting loss of morale, exodus of employees, and disruption to its operations. Paying the Pre-Petition Employee Obligations will minimize the hardship that employees will certainly endure if payroll is interrupted and will prevent the wholesale loss of employees that would ensue if the employees lost the reasonable expectation that they will be paid for their work.

19.     As a result, payment of the Pre-Petition Employee Obligations is necessary to prevent the risk of damage to Regency's estate, which would adversely affect all parties in interest. In this case, the continued services and cooperation of Regency's employees is integral and necessary to operating Regency's skilled nursing facility and providing care for its patients. If Regency is unable to assure its employees that they will be paid timely, or if employees are not assured of uninterrupted, critical payments to which they are entitled, Regency's post-petition operations would be seriously jeopardized due to employee resentment, resignations, loss of good will and disruption of employee morale. Regency has not identified a practical or legal alternative to payment of the Pre-Petition Employee Obligations that would not result in a loss of employees or other disruption of its business.

20.     Accordingly, in the exercise of my business judgment I believe that it is in the best interest of its estate to pay the Pre-Petition Employee Obligations as set forth in the Wage Motion in the ordinary course of business.

**E.     The Joint Administration Motion**

21.     The Debtors have also filed a motion requesting the joint administration of their Chapter 11 cases for procedural purposes only. The Debtors are affiliates because each of the Debtors is either (i) a subsidiary of NLH, or (ii) is owned by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of NLH. I believe that the rights of all parties in interest will be enhanced by the

reduction in costs resulting from joint administration, and that all parties in interest will benefit from the efficiencies realized from procedural joint administration of the Bankruptcy Cases.

22.     I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 16, 2014

_____
Raymond P. Mulry
Designated Officer

**EXHIBIT A**





Schwartzberg 2004 Descendants Trust

Trustees:
Maxwell Stolzberg,
Florence Schwartzberg,
Alan Witt

HS Master, LLC

Manager:
Harris Schwartzberg

(70%)

(30%)

(100%)

Atrium 6555 Tenant, LLC
(The Atrium at Lafreniere Assisted Living)

Manager:
(New Louisiana Holdings, LLC)

Citiscape Out Parcel Tenant, LLC

Manager:
(New Louisiana Holdings, LLC)

Sherwood 2828 Tenant, LLC
(Sherwood Manor Nursing & Rehabilitation)

Manager:
(New Louisiana Holdings, LLC)

Lakewood Quarters Assisted 8585 Tenant, LLC
(Lakewood Quarters Retirement Community)

Manager:
(New Louisiana Holdings, LLC)

Citiscape 5010 Tenant, LLC
(Citiscape at Essen)

Manager:
(New Louisiana Holdings, LLC)